BANK OF ROXIE *v.* T. B. LAMPTON, RECEIVER.

[61 South. 452 and 650]

BANKS AND BANKING. *Insolvency. Fraudulent drafts. Misconduct of officers. In pari delicto.*

Where the president of a bank, who was also the cashier of a trust company, fraudulently drew drafts as president against the bank's deposit in the trust company, and deposited them to the credit of his personal account with the trust company, and afterwards drew out the money, the bank was wholly without fault in the matter and it was error to dismiss a bill by the bank against the receiver of the trust company, on the theory "that a fraud had been perpetrated by both parties, one upon the other" and that therefore neither of them were entitled to relief.

OPINION ON SUGGESTION OF ERROR.

BANKS AND BANKING. *Insolvent claims. Allowance of interest.*

Where under the direction of the court below the assignees of an insolvent bank refuse to pay interest on any indebtedness due by the bank after the date of its assignment to them for the benefit of creditors; and all dividends which have been paid to creditors have been apportioned upon the principal of the debt and interest thereon prior to the date of the assignment. Plaintiff, whose claim was contested by the assignees, is not entitled to interest upon its entire claim, but only upon the dividends which would have been received by it had not its claim been contested by the assignees.

APPEAL from the chancery court of Pike county.

HON. J. S. HICKS, Chancellor.

Bill by the Bank of Roxie against T. B. Lampton, as receiver of the Pike County Bank & Trust Company, to recover an alleged balance due it by the trust company at the time of its suspension. A cross-bill was filed by defendant. On the hearing both bills were dismissed and both sides appeal.

The agreed statement of facts was as follows:

"It is agreed by complainant and defendant in this cause that on December 19, 1905, W. R. Caston, who was president of the Bank of Roxie, and cashier of the Pike County Bank & Trust Company, acting as president of the Bank of Roxie, and cashier of the Pike County Bank & Trust Company, acting as president of the Bank of Roxie, drew a draft on the account of the Bank of Roxie for the sum of five thousand dollars on deposit with the Pike County Bank & Trust Company, and that this draft W. R. Caston credited to his personal account at the Pike County Bank & Trust Company, which he used.

"It is agreed that on April 2, 1910, W. R. Caston, cashier of the Pike County Bank & Trust Company and president of the Bank of Roxie, deposited with the Pike County Bank & Trust Company the sum of two thousand dollars to his personal account in said bank, and as president of the Bank of Roxie, directed that this sum of money be charged to the Bank of Roxie; said sum being

derived by being charged to the Bank of Roxie and afterwards credited to his account.

"It is admitted that on January 26, 1910, W. R. Caston, acting as cashier of the Pike County Bank & Trust Company, and acting as president of the Bank of Roxie, directed the Bank of Roxie to charge the Pike County Bank & Trust Company with the sum of two hundred and forty dollars, but that this sum was not shown by the Pike County Bank & Trust Company's books, but it so received the money.

"It is admitted that W. R. Caston, acting as president of the Bank of Roxie, drew a draft on the Bank of Roxie, from the funds of the Bank of Roxie deposited with the Pike County Bank & Trust Company, and redeposited same to his (W. R. Caston's) personal account, without notifying the Roxie Bank.

"It is admitted that on January 21, 1907, W. R. Caston, acting as president of the Bank of Roxie, drew a draft of one thousand dollars on the account of the Bank of Roxie with the Pike County Bank & Trust Company, and deposited the same to the credit of his personal account.

"It is admitted that on December 20, 1907, W. R. Caston, acting as president of the Bank of Roxie, drew a draft on the funds of the Bank of Roxie on deposit with the Pike County Bank & Trust Company, and deposited same to his personal account in the said Pike County Bank & Trust Company.

"It is agreed and admitted that on December 31, 1907, W. R. Caston drew a draft on the funds of the Bank of Roxie on deposit with the Pike County Bank & Trust Company, signing same as president of the Bank of Roxie for the sum of two thousand dollars, and deposited same in the Pike County Bank & Trust Company to the credit of W. R. Caston's personal account.

"That these items aggregate twelve thousand and two hundred and forty dollars, and that the Pike County Bank & Trust Company paid out the money in the manner

above set out, and that neither the Bank of Roxie nor W. R. Caston has ever repaid said amounts.

"It is admitted that, subsequent to the drawing of the above amounts, W. R. Caston reimbursed the Bank of Roxie to the amount of seven thousand two hundred forty-one dollars and eighteen cents by the following method:

"He would deposit in the Pike County Bank & Trust Company a draft, then secure New Orleans exchange for the amount of the draft, and remit same to the New Orleans correspondent of the Bank of Roxie for the credit of the Bank of Roxie, and, so far as the records would show of the Bank of Roxie, the same appeared to be remitted by the Pike County Bank & Trust Company and charged to the Bank of Roxie at the Pike County Bank & Trust Company, as per instruction from ·W. R. Caston to the Bank of Roxie.

"It is agreed that the books of the Bank of Roxie show that the Pike County Bank & Trust Company is due to the Bank of Roxie four thousand nine hundred ninety-seven dollars and eighty-two cents brought about by W. R. Caston, while acting as president of the Bank of Roxie, drawing funds from the Bank of Roxie with the Pike County Bank & Trust Company, and depositing same to his personal credit in said Pike County Bank & Trust Company, and instructing the Bank of Roxie to charge same to the Pike County Bank & Trust Company.

"It is agreed that the books of the Pike County Bank & Trust Company show that the Bank of Roxie is due it twelve thousand two hundred forty dollars, as above shown.

"It is agreed that in each and all of the above transactions, and at any and all of the times mentioned, W. R. Caston was acting both as cashier of the Pike County Bank & Trust Company at McComb City, Miss., and president of the Bank of Roxie, at Roxie, Miss., and that he lived in McComb City, and had daily supervision of the Pike County Bank & Trust Company as cashier, with the

bookkeeper and assistant cashier; likewise he was in daily communication, over the phone and sometimes by personal visits to the Bank of Roxie, with the cashier and bookkeper of said bank.

"That the directors and other officers in neither bank had actual knowledge of any of the items of either account, and issued no orders or instructions in regard to same, and did not know that they were handled as above."

*V. Otis Robinson* and *Thos. S. Bratton,* for appellant.

Are the two corporations, the Bank of Roxie and the Pike County Bank & Trust Company, guilty of fraud, each upon the other, because of the fraudulent transactions of one person who is an official in each? Is the Pike County Bank & Trust Company indebted to the Bank of Roxie? Is the Bank of Roxie indebted to the Pike County Bank & Trust Company?

In answer to the first question, the chancellor in the lower court says in his decree: "And it appearing to the court that a fraud has been perpetrated by both parties, one upon the other, it is hereby ordered and decreed that the original bill of complaint and the cross-bill, be and the same are hereby ordered stricken from the files and the cause dismissed."

From this decree, both the complainant and the defendant have appealed. It settles nothing; it leaves complainant and defendant without a remedy at law; it doesn't decide from which one of the banks W. R. Caston stole money; it places no liability; it forces both complainant and defendant into the criminal court in an attempt to collect the debt; it dodges the issue which must be met and decided, before prosecution can be started in the criminal court. The question of liability on bonds cannot be decided because naturally, bondsmen in one bank would claim that the theft was from the other and the result would be a legal shell game which would be never ending and with certain loss to all litigants.

On page 310 of Morse on Banks & Banking, we find: "Indeed it is a singular fact that the entire collection of

judicial authorities justifies the enunciation of only one act as falling within the properly inherent power of the president. This solitary function is to take charge of the litigation of the bank.''

On page 312 of the same authority we find the following: ''The control of the president of a bank over its property of any description whatsoever from real estate down to a naked right to bring any action at law is of the slightest. He has no power to draw checks in its behalf or against its funds; nor has he authority to bind the bank by executing a note in its name. He is not the executive officer who has charge of its moneyed operations. It is not among his functions to withdraw or remove its deposited fund or to use them for any purpose whatsoever, he cannot even employ any portion of the assets or credits of the bank for paying or settling with its creditors unless by virtue of an express delegation of authority from the directors; nor has he implied authority to use the funds of the bank to pay his personal obligations.'' *Chrystie* v. *Foster*, 61 Fed. 551; *Gibson* v. *Coldthwaite*, 7 Ala. 281; *Beard* v. *Milmine*, 88 Fed. 868; *Lamson* v. *Board*, 94 Fed. 30.

On page 317 of the same authorities we find: ''A president cannot certify his own check; such certification is on its face notice of fraud to all; nor can he use the bank's funds to pay his personal obligations.'' *Claflin* v. *Bank*, 25 N. Y. 219.

And at the bottom of the same page we find: ''The courts have contented themselves with holding that a president cannot bind the bank in any unusual manner or in any undertaking lying outside of his customary routine of business.''

It is to be conceded that a corporation can commit a fraud and it is well settled that the familiar rule that equity will not interfere in behalf of either party to a fraudulent contract has been applied where the corporation has been guilty of fraud, through its board of directors in entering into a contract, but the question is, Did

the Bank of Roxie, as a bank, commit a fraud on the Pike County Bank & Trust Company?

It is to be noted that the board of directors did nothing at all, authorized nothing, consented to nothing, acquiesced in nothing, and knew nothing about the transaction, so now the question is: Would the act of the president, assuming to transact business in the name of the bank, under the circumstances bind the Bank of Roxie?

This brings us separately up to the consideration of the authority of a bank president, and in this case, of a bank president, who is not in active charge of the business, who does not reside even in the town in which the bank is located, but resides in another town and has active duties elsewhere.

Morse on Banks and Banking (4 Ed.), page 309, says: "A careful collation of all the adjudicated cases, it must be confessed, wears a striking and peculiar aspect which is not very favorable to the assumption of any species of executive power by a bank president without direct authorization. With scarcely an exception, all of the decisions are to the effect that the president had no right to perform some particular act, which he had undertaken probably in perfect good faith to perform and which had been called in question and had given rise to the litigation in which it was condemned."

From the above it can readily be seen that the Bank of Roxie would not have been bound by the act of W. R. Caston, as its president, in drawing out the funds of the Bank of Roxie on deposit with the Pike County Bank & Trust Company and depositing to his own credit in the same bank.

In other words, if the cashier of the Pike County Bank & Trust Company had permitted the president of the Bank of Roxie to draw its funds and use them for his personal obligations, then the Bank of Roxie would not be bound. It would be notice of fraud to the Pike County Bank & Trust Company—sufficient notice to put every

one connected with it on notice. The very appearance of the thing would be fraudulent, and certainly since the president of the bank does not have authority unless expressly given by the board of directors to borrow money and negotiate notes, then the Pike County Bank & Trust Company could not hold the bank of Roxie on an overdraft of twelve thousand two hundred forty dollars, the proceeds of which had gone to the personal use of its own cashier.

Would it be contended that if the cashier of the Pike County Bank & Trust Company were some other person than the president of the Bank of Roxie and that he passed to his personal credit, even with the consent of the president of the Bank of Roxie, all of its funds and in addition twelve thousand and two hundred and forty dollars, that the Bank of Roxie would be bound?

In 5 Thompson on Corporations (2 Ed.), par. 5475, we find: "A cashier of a bank receiving a depositor's check with instructions to transmit the amount named to another institution for deposit, is the agent of the bank and not of the depositor and the bank is liable for the cashier's misappropriation of the funds." *Goshorn* v. *Peoples National Bank*, 69 N. E. 185, 102 Am. St. 248.

And in the same paragraph we find the following: "A corporation is not bound by the act of an officer in diverting its funds to its personal use where the person thus dealing with the officer knows, or by the exercise of ordinary care may know of the breach of trust. Thus a broker who receives from a bank president drafts of the bank, in payment for his private loss in board of trade speculations under circumstances charging him with notice, that the drafts represented money embezzled from the bank, is liable to the bank for the proceeds of such drafts. *Beard* v. *Milmine*, 88 Fed. 868; also *Campbell* v. *Bank*, 51 Atl. 497, 91 Am. St. 438.

In 67 Miss. 60, *George C. Eyrick* v. *Capital State Bank*, it has been held:

"A partnership is not bound to a bank for a loan ob-

tained from it by a partner in the firm name but without authority if the bank knew that the partner was borrowing the money for his own use in the payment of a debt due by him individually, to the bank.''

From all of the above it is perfectly clear that W. R. Caston had no authority as president of the bank of Roxie to bind the Bank of Roxie in any of the transactions. They were fraudulent on their face and gave notice to all. All of his acts were *ultra vires* absolutely beyond the apparent scope of his authority, never acquiesced in, never authorized, never consented to, no lashes indulged in, for the reason that the officers and directors of the Bank of Roxie were absolutely ignorant of any of the transactions and had no power of discovering the transactions, except by an examination of the books of the Pike County Bank & Trust Company, to which they did not have access, and which were absolutely under the control of the officers of the Pike County Bank & Trust Company.

*Wells, Price & Mixon,* for appellees.

It is a rule of this court that no reversal will be had, except where the result of the trial has resulted in a miscarriage of justice. While there has been an appeal in this case on the part of assignees of the Pike County Bank & Trust Company as cross-appellants, we have concluded, after consideration, that there has not been any miscarriage of justice in this case and that for that reason the decree of the chancellor should be affirmed.

The facts, as they appear in the record, show that the Bank of Roxie, appellant, and the Pike County Bank & Trust Company, appellee, and cross-appellant, had turned the management of their affairs over to an unscrupulous person named W. R. Caston, and that while acting in the official capacities of president of the Bank of Roxie and as cashier of the Pike County Bank & Trust Company, he proceeded to rob both institutions.

The facts show that both of the institutions were run

under the exclusive management and control of Caston, and that the directors of both banks were hopelessly and almost crimnally negligent in the failure to discharge their duties to either institution in that they permitted the affairs of both to be run under the exclusive dictation of Caston as the president of the one, and as cashier of the other.

There is no room in this case for the application of many of the legal principles announced in the brief of appellant's counsel, for the reason that the distinguished chancellor who tried the case in the court below found as a matter of fact, that both institutions were so flagrantly neglectful of their duties, that they were bound by the acts of this man who was acting for both, and that the two institutions were actively engaged in defrauding each other, and therefore neither of them were entitled to the relief prayed for upon the familiar principle, that equity will not interfere in behalf of either party under such circumstances.

This finding of facts by the chancellor, will not be disturbed by this court, unless it shall appear from the record that a manifest error has been made, which has resulted in a miscarriage of justice.

Without going into any elaborate discussion of the technical duties of officers and employees of banks a discussion of which will not be of any service to the court in determining the issues presented in this case, we submit the case without the citation of authorities, with the passing suggestion that many of the old rules of law as to the respective duties and liabilities of officers and employees of banks, and other corporations, have been obsolete and of no binding force under changed conditions and modern methods of conducting such business.

The right result has been reached in this case and we therefore submit that the decree of the chancellor should be affirmed.

SMITH, C. J., delivered the opinion of the court.

Counsel for appellee do not, and in fact could not suc-

cessfully, contend that Caston was authorized to with-draw the money deposited by appellant in the Pike County Bank & Trust Company and apply it to his own benefit, but seek to uphold the decree of the court below on the ground that it found as a fact "that a fraud had been perpetrated by both parties, one upon the other," and therefore neither of them was entitled to relief. In so finding, the court below erred; for it is manifest from the agreed statement of facts that the appellant was wholly without fault in the matter, and that the Pike Couny Bank & Trust Company was simply the victim of Caston's fraudulent conduct.

The decree of the court below is reversed. Decree will be entered here for appellant for the sum of four thous-and nine hundred ninety-seven dollars and eighty-two cents, with interest thereon from the 31st day of March, 1908, in accordance with the prayer of its bill, dis-missing appellee's cross-bill, and taxing it with the costs in this and the lower court.

### OPINION ON SUGGESTION OF ERROR.

SMITH, C. J., delivered the opinion of the court.

At a former day of this term the decree of the court below in this case was reversed, and decree was entered here in favor of appellant for the sum sued for, together with interest thereon at the rate of six per cent. per annum from March 3, 1908. Appellees now request that this de-cree be corrected, so as to eliminate therefrom this item of interest.

Appellees are the assignees of the Pike County Bank & Trust Company, an insolvent corporation, the liabili-ties of which exceed its assets, and are administering its affairs in the court below. Under the direction of the court below, they have heretofore declined to pay interest on any indebtedness due by this bank after the date of its assignment to them for the benefit of creditors; all divi-dends which have been paid to creditors being appor-

tioned upon the principal of the debt and interest thereon prior to the date of this assignment. Three dividends have been paid to the other creditors—one for twenty-five per cent.; on December 8, 1909; one for fifteen per cent., on August 26, 1910; and one for twenty per cent., on January 3, 1912. From this it appears that, if appellant is to be allowed interest on its claim from the date of the assignment, as was done in the decree hereinbefore rendered, it will obtain a preference in the matter of interest over the other creditors of the bank. It is not entitled, therefore, to the whole of this interest; but it is entitled to be put upon an equality with the other creditors, and is therefore entitled to interest on the dividends declared, and which would have been received by it, had the receivers not contested its claim, from the dates they were declared and ought to have been paid. *In re Claim of the Ilion National Bank,* 59 Hun, 307, 12 N. Y. Supp. 829; *Armstrong* v. *American Exchange, etc., Bank,* 133 U. S. 433, 10 Sup. Ct. 450, 33 L. Ed. 747.

The motion will be sustained to the extent herein indicated and the decree corrected accordingly.

*Suggestion of error sustained.*